UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-3162(DSD/SRN)

Carl Robert Nelson,

       Plaintiff,

v.                                 **ORDER**

Wachovia Securities, LLC,

       Defendant.

Casey M. Oppenheim, Esq., 150 South Fifth Street, Suite 320, Minneapolis, MN 55402, John D. Thompson, Esq., Natalie Wyatt-Brown, Esq. and Oberman, Thompson & Segal, One Financial Plaza, 120 South Sixth Street, Suite 850, Minneapolis, MN 55402, counsel for plaintiff.

Gerald L. Pauling II, Esq., Barbara H. Borowski, Esq. and Seyfarth, Shaw, 131 South Dearborn, Suite 2400, Chicago, IL 60603 and Joseph G. Schmitt, Esq. and Halleland, Lewis, Nilan & Johnson, 220 Sixth Street South, Suite 600, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motions of defendant Wachovia Securities, LLC ("Wachovia") to dismiss and strike portions of plaintiff Carl Robert Nelson's ("Nelson") amended complaint. Based upon a review of the file, record and proceedings herein, and for the following reasons, the court grants in part and denies in part defendant's motions.

**BACKGROUND**

This employment dispute stems from Wachovia's termination of Nelson in 2006. Wachovia is a brokerage firm with its principal place of business in Richmond, Virginia. In late 2001, Wachovia merged with First Union Securities ("First Union") and assumed control of First Union's Bloomington, Minnesota, office and its employees. Among the employees was Nelson, a broker whom First Union had hired away from RJ Steichen several months before the Wachovia merger.

First Union offered Nelson several incentives to entice him to leave RJ Steichen. Unlike other brokerage firms, First Union allowed Nelson to bring his foreign accounts with him, and it included this promise in Nelson's offer of employment. Further, First Union offered Nelson a $630,000 signing bonus - designed as a loan to be forgiven over a six-year period. RJ Steichen accused First Union of "raiding" and threatened legal action against First Union and Nelson. To settle the issue, Nelson paid RJ Steichen $50,000, of which First Union agreed on August 3, 2001, to pay half. When it merged with First Union, Wachovia assumed the rights and obligations of these agreements between First Union and Nelson.

In May 2003, Wachovia and Nelson modified the terms of the promissory note, extending it an additional eight years. The revised promissory note provides that the entire balance is due if Nelson was terminated for any reason or if he incurred a disability

under Wachovia's long-term disability ("LTD") plan. Nelson also signed a bonus agreement in which his annual bonuses would approximately equal the amount due each year on the promissory note. The 2003 bonus agreement provides that Nelson must be employed in order to receive annual bonuses. However, it provided that if Nelson died or incurred a disability under the LTD plan he or his estate would receive a payment equal to the remaining bonus payments. At the time of his termination, Nelson owed $431,000 on the promissory note.

On June 22, 2006, Nelson had a horse-riding accident in which he suffered head trauma, multiple fractures and soft tissue injuries. Although Nelson was not aware of the extent of his injuries immediately after the incident, he began to have "significant cognitive difficulties" soon after his fall. (Am. Compl. ¶ 16.) On July 11, 2006, Nelson requested a leave of absence under Wachovia policies and the Family and Medical Leave Act (FMLA) and applied for Wachovia's short-term disability ("STD") benefits. Wachovia's STD program is a self-insured plan sponsored by Wachovia and administered by Liberty Mutual. On July 12, 2006, Liberty Mutual denied Nelson's STD claim. After a medical appointment on July 17, 2006, Nelson again filed a STD claim and requested a leave of absence under Wachovia policies and the FMLA. That same day, Nelson went to the office to discuss his requests with his supervisor, Denise Olson ("Olson"). Olson instructed

3

Nelson to go on full-time disability but allowed him to remain at the office.

While there, Olson interacted with Betsy Stubson ("Stubson"), the operations manager at Wachovia. During their conversation, Olson placed his hand near or on Stubson's neck. Stubson took offense, and Nelson apologized. After Olson reported that Stubson was still upset, Nelson again apologized. The following day, Wachovia human resources employee Lorie Helmuth ("Helmuth") called Nelson to interview him about the Stubson incident. Nelson told Helmuth he was unable to speak with her due to his accident and the medications he was taking. Helmuth called the next day and conducted the interview. Soon after the incident and interview, Wachovia placed Nelson on administrative leave, and Liberty Mutual again denied his claim for STD benefits.

On August 4, 2006, Wachovia complex manager Craig Dahl ("Dahl") informed Nelson that Wachovia was terminating him effective July 17 for failure to comply with company policy. Dahl gave Nelson the option of resigning or being fired and requested an immediate response. Nelson told Dahl he would get back to him after contacting an attorney. Shortly thereafter, Nelson left a voice mail message for Dahl in which he resigned; however, at that point Wachovia had already terminated Nelson for actions that "violate firm policy and demonstrated a lack of judgment." (Id. ¶ 26.)

On October 5, 2006, Liberty Mutual denied Nelson's third claim for STD benefits, claiming that it had insufficient medical information and that Wachovia terminated Nelson for cause. After Nelson contacted the Minnesota Department of Commerce about his benefits denials, Liberty Mutual approved his STD claim on December 19, 2006. It granted Nelson STD benefits for a period from June 22, 2006, to August 3, 2006, but refused to grant benefits from August 4, 2006, onward because Wachovia had terminated Nelson for cause on that date. (Id. ¶ 28.) Under the STD plan, employees are not eligible for benefits upon termination. Likewise, employees can receive no LTD benefits unless they qualify for STD benefits and are currently employed by Wachovia. Despite assurances in March 2007 that he would receive STD payments for the June 22 to August 3 period, Nelson has yet to receive such benefits. Further, Nelson has not received an alleged $78,000 in production bonuses that he claims is due to him under the terms of Wachovia's employee handbook. (Id. ¶ 35.)

Nelson filed this action on June 28, 2007, alleging disability discrimination under the Minnesota Human Rights Act, FMLA and Employee Retirement Income Security Act ("ERISA") violations, breach of contract, promissory estoppel and defamation against Wachovia. On October 24, 2007, Wachovia moved to dismiss Nelson's breach of contract, promissory estoppel and ERISA claims and to strike his jury trial request and demand for compensatory damages.

**DISCUSSION**

**I.   Motion to Dismiss**

Pursuant to Rule 12(b)(6), the court will dismiss a complaint for failing to state a claim upon which relief may be granted if, after taking all facts alleged in the complaint as true, it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief.  See Fed. R. Civ. P. 12(b)(6); Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 937 (8th Cir. 2005).  Dismissal under Rule 12(b)(6) is only warranted "in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief."  Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004).

   **A.   ERISA Preemption**

In his amended complaint, Nelson alleges that Wachovia breached numerous contracts, including a contract allowing Nelson to bring his foreign accounts to First Union, an employment contract, an employment bonus contract, a production bonus agreement, a STD benefits agreement and Nelson's right to STD and LTD benefits under Wachovia's disability programs.  Alternatively, Nelson asserts that Wachovia made clear and definite promises upon which he relied and which Wachovia breached.  Wachovia argues that ERISA preempts Nelson's breach of contract and promissory estoppel claims.

Congress enacted ERISA to protect "the interests of participants in employee benefit plans and their beneficiaries ... [and] to provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(b).  Because the purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans, ERISA "includes expansive pre-emption provisions ... which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'"  Aetna Health Inc. v. Davila, 541 U.S. 200, 208 (2004) (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981)).  Accordingly, any state-law cause of action that "duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  Id. (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54-56 (1987)).

It is undisputed that Wachovia's LTD plan is governed by ERISA.  Therefore, Nelson's breach of contract and promissory estoppel claims involving his "right to ... LTD benefits under Wachovia's ... LTD Plan," (Am. Compl. ¶¶ 54(f), 57-60), are preempted by ERISA's civil enforcement remedy.  See Howard v. Coventry Health Care, of Iowa, Inc., 293 F.3d 442, 446 (8th Cir. 2002) (breach of contract); Molasky v. Principal Mut. Life Ins. Co., 149 F.3d 881, 884 (8th Cir. 1998) (breach of contract); Algren v. Pirelli Armstrong Tire Corp., 197 F.3d 915, 917 (8th Cir. 1999)

(promissory estoppel). Nelson's other breach of contract and promissory estoppel claims, however, do not relate to the ERISA-governed plan and are not preempted. See Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985). The court therefore grants Wachovia's motion to dismiss only as to Nelson's breach of contract and promissory estoppel claims that seek to recover LTD benefits.

**B.   Promissory Estoppel Claims**

Wachovia seeks to dismiss Nelson's remaining promissory estoppel claims, arguing that the amended complaint asserts only conclusions of law without supporting facts. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement does not require detailed factual allegations so long as it "'give[s] the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In addition, on a motion to dismiss the court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

Promissory estoppel is an "equitable doctrine that implies a contract at law where none exists in fact." Javinsky v. Comm'r of Admin., 725 N.W.2d 393, 398 (Minn. Ct. App. 2007) (citing Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000)). In

Minnesota, promissory estoppel requires that (1) there was a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice. See Olson v. Synergistic Techs. Bus. Sys., Inc., 628 N.W.2d 142, 152 (Minn. 2001). The third requirement is a question of law in which, the court weighs public policies in favor of both enforcing bargains and preventing unjust enrichment and considers the reasonableness of the promisee's reliance and the extent to which the promisee relied to his or her detriment. See Faimon v. Winona State Univ., 540 N.W.2d 879, 883 (Minn. Ct. App. 1995); Martens, 616 N.W.2d at 746.

Nelson's promissory estoppel claims are not replete with factual detail; however, by incorporating the previous paragraphs, the complaint identifies alleged promises that could satisfy the first prong of a promissory estoppel inquiry. (See Am. Compl. ¶¶ 57-61¶¶ 8, 9, 15, 30, 35.) Further, Nelson adequately alleges the remaining elements of a promissory estoppel claim. At this stage in the proceedings, Nelson's pleading is sufficient to put Wachovia on notice - as required by Rule 8 - of the claims it faces. See Netbank v. Williams, No. 4:06CV1295, 2007 WL 2434051, at *4 (E.D. Mo. Aug. 22, 2007); Associated Indem. Corp. v. Small, No. 06-00187, 2007 WL 844773, at *8 (W.D. Mo. Mar. 19, 2007). Accordingly, the court denies Wachovia's motion to dismiss the remainder of Nelson's promissory estoppel claims.

### C. Exhaustion of Remedies

Wachovia argues that Nelson impermissibly seeks ERISA benefits without having first exhausted his administrative remedies. Although ERISA itself contains no exhaustion requirement, it is "well-established that when exhaustion is clearly required under the terms of an ERISA benefits plan, the plan beneficiary's failure to exhaust [his] administrative remedies bars [him] from asserting any unexhausted claims in federal court." Burds v. Union Pac. Co., 223 F.3d 814, 817 (8th Cir. 2000). It is unsettled within the Eighth Circuit, however, whether a plaintiff alleging a § 510 violation[1] must exhaust his administrative remedies. See id. Therefore, while a court "does not abuse its discretion in requiring plaintiffs to exhaust their administrative remedies" in cases where resolution of the § 510 matter turns on an interpretation of the ERISA benefits plan at issue, § 510 does not mandate exhaustion. See id. (collecting cases to demonstrate circuit split).

The court finds that resolution of Nelson's § 510 claim does not turn on an interpretation of the Wachovia plan. Rather, as

---

[1] ERISA § 510 states:
It shall be unlawful for any person to discharge ... or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ....
29 U.S.C. § 1140.

pleaded, this case focuses only on whether Wachovia terminated Nelson with the specific intent to interfere with his receipt of ERISA benefits. Such an issue involves no interpretation of the plan itself. See Patnaude v. Qwest Corp., No. 01-1847, 2003 WL 22076564, at *6 (D. Minn. Sept. 2, 2003). Accordingly, exhaustion is not required, and Nelson may proceed with his § 510 claim.[2]

## II.  Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Judges enjoy "liberal discretion" to strike pleadings under Rule 12(f). BJC Health Sys. V. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007). Striking a party's pleading, however, is an extreme and disfavored measure. See Stanbury Law Firm, P.A. v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000).

### A.   Jury Request

Wachovia moves to strike Nelson's request for a jury trial as to his ERISA and state-law claims for LTD benefits. The court has determined that ERISA preempts Nelson's breach of contract and

---

[2] Wachovia also moves to dismiss Nelson's ERISA claims because ERISA does not govern Wachovia's STD plan. It is undisputed that ERISA does not govern Wachovia's STD plan. Thus, Nelson cannot seek STD benefits pursuant to § 510 of ERISA. However, because Wachovia's ERISA-governed LTD plan defines disability in part on Wachovia's STD plan, Nelson's mention of the STD plan in his ERISA claim does not warrant dismissal of his claim. (See Def.'s Mem. in Supp. of Mot. to Dismiss Ex. A at 4.)

11

promissory estoppel claims for LTD benefits.  Further, the parties agreed at oral argument that Nelson is not entitled to a jury trial on his § 510 ERISA claim.  Accordingly, the court grants Wachovia's motion to strike Nelson's jury request as to his ERISA claim.

### B. Compensatory Damages

Wachovia also seeks to strike Nelson's request for compensatory damages on his ERISA claim, arguing that only equitable relief is available under § 510.  Nelson acknowledges that ERISA § 502(a)(3)(B) – the exclusive remedy for a § 510 claim – permits only "other appropriate equitable relief."  29 U.S.C. § 1132(a)(3)(B).  However, he argues that the scope of this "appropriate equitable relief" is ambiguous and that there is no need at this early stage of the litigation to strike his damages claim.

ERISA § 502(a)(3) authorizes a plan beneficiary to "(A) enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate relief (I) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Recovery under 502(a)(3) is limited to "classic equitable remedies such as injunctive, restitutionary, or mandamus relief, and does not extend to compensatory damages."  Knieriem v. Group Health Plan, Inc. 434 F.3d 1058, 1061 (8th Cir. 2006) (internal citations and quotations omitted).  Rather, compensatory damages are "the

classic form of *legal* relief." <u>Mertens</u>, 508 U.S. 248, 255 (1993). Therefore, Nelson cannot recover monetary damages pursuant to his ERISA claim.  Accordingly, the court grants Wachovia's motion to strike Nelson's demand for compensatory damages on his ERISA claim.

## CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that:

1.   Defendant's motion to dismiss [Doc. No. 21] is granted as to plaintiff's breach of contract and promissory estoppel claims that seek LTD benefits and denied as to plaintiff's remaining breach of contract, promissory estoppel and ERISA claims.

2.   Defendant's motion to strike plaintiff's jury request and demand for compensatory damages as to his ERISA claim [Doc. No. 19] is granted.

3.   The court strikes the demand for damages other than LTD benefits in paragraph 65 of the amended complaint and the demand for lost and future income and liquidated damages in paragraph 4 of the amended complaint's prayer for relief.

Dated:  March 19, 2008

<u>s/David S. Doty</u>
David S. Doty, Judge
United States District Court