UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-3162(DSD/SRN)

Carl Robert Nelson,

       Plaintiff,

v. **ORDER**

Wachovia Securities, LLC,

       Defendant.

    Casey M. Oppenheim, Esq., 929 Portland Avenue South, Suite 1009, Minneapolis, MN 55404 and John D. Thompson, Esq., Natalie Wyatt-Brown, Esq. and Oberman, Thompson & Segal, One Financial Plaza, 120 South Sixth Street, Minneapolis, MN 55402, counsel for plaintiff.

    Joseph G. Schmitt, Esq., Halleland, Lewis, Nilan & Johnson, 220 South Sixth Street, Suite 600, Minneapolis, MN 55402 and Barbara H. Borowski, Esq., Gerald L. Pauling II, Esq., William F. Dugan, Esq. and Seyfarth and Shaw, 131 Sough Dearborn, Suite 2400, Chicago, IL 60603, counsel for defendant.

This matter is before the court on defendant's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

This employment dispute arises out of the August 4, 2006, termination of plaintiff Carl Robert Nelson ("Nelson") by defendant Wachovia Securities, LLC ("Wachovia"). Nelson began work as a securities broker at First Union Securities ("First Union") on May

18, 2001. Nelson's employment agreement with First Union gave him numerous incentives to leave his former employer, including enrollment in First Union's disability benefit plan and a signing bonus in the form of a $647,467 six-year loan. (Pl. Ex. C-1 at 55-57; Ex. D at 147-53.) In addition, First Union allowed Nelson to maintain the foreign accounts he had established at his prior place of employment. (Pl. Ex. C-1 at 56.)

First Union merged with Wachovia on September 1, 2001, and Nelson became a Wachovia employee. On March 19, 2003, Nelson refinanced the six-year loan with Wachovia and agreed to repay it by March 11, 2011, or immediately upon "event of default." (Nelson Dep. Ex. 34 at 165-66.) Default events included death, disability or termination of employment with Wachovia "for any reason." (Id. at 165.) The refinancing agreement also provided Wachovia a "right of set-off," allowing it to apply "all commissions, bonuses or other amounts due you by [Wachovia]" to repayment of the loan upon default. (Id.)

Also on March 19, Wachovia awarded Nelson a $744,521 employment bonus to be paid over eight years. (Pl. Ex. C-1 at 43.) The bonus agreement stated that if

> before the employment bonuses have been paid in full, you die or incur a Disability (Disability means the total disability of a participant as a result of injury or sickness as defined in the Wachovia Corporation Long-Term Disability Plan ("LTD Plan")) [you] will be paid a lump sum equal to any remaining bonus payments.

2

(Nelson Dep. Ex. 34 at 43.) The bonus agreement required Nelson to be "an employee in good standing" with Wachovia and noted that "if your employment terminates for any reason other than death or disability ... you will forgo any unpaid employment bonus installments." (Id.)

On June 22, 2006, Nelson suffered a moderate brain injury, fractured ribs and neck and back pain after a horse riding accident. (Nelson Dep. at 175-76; Dr. Lund Dep. at 77; Pl. Ex. C-1 at 795, 884.) The following day, Nelson's wife, Raun Nelson ("Raun") - who also worked at Wachovia - informed branch manager Denise Olson ("Olson") of Nelson's injuries. (Decl. Raun Nelson ¶ 16.) Raun told Olson that Nelson needed time off from work to recover and asked if she could cover her husband's duties in his absence. (Id.) Olson indicated that she would ask her supervisor whether such an arrangement was possible. (Id.) In the meantime, Nelson worked a reduced schedule. (Nelson Dep. at 235, 329.)

On July 6, 2006, Olson notified the Nelsons that Raun could not cover Nelson's duties because she lacked the necessary licenses. (Decl. Raun Nelson ¶ 21.) Olson allegedly told Nelson to "hang in there" and continue working until Wachovia found someone to cover for him. (Id.; Decl. Carl Nelson ¶ 18.) The following day, Nelson met with Olson and told her that he wanted to "go on the record and formally apply for medical leave." (Decl. Raun Nelson ¶ 23; Decl. Carl Nelson ¶ 18.) Olson gave Nelson the

3

necessary information and paperwork for his application and referred the matter to her assistant, Betsy Stubson ("Stubson"). (Decl. Raun Nelson ¶ 23; Decl. Carl Nelson ¶ 18.)

On July 11, 2006, Nelson applied for short term disability ("STD") benefits with Liberty Mutual ("Liberty") and leave under the Family Medical Leave Act ("FMLA")[1] with Hewitt & Associates ("Hewitt").[2] (Decl. Carl Nelson ¶ 19.) Liberty denied Nelson's application the next day, citing failure to provide notice of the claim within sixty days of the reported date of loss.[3] (Olson Dep. Ex. 3.) Liberty later allowed Nelson to amend his date of loss, and in December 2006, granted Nelson STD benefits from June 22, 2006, until his discharge on August 4, 2006. (Gibbons Dep. Ex. 11.) Hewitt informed Nelson three times in July and August 2006 that his application for FMLA leave was incomplete. (Albuquerque Dep. Ex. 5 at 739, 744, 754.) As a result, Nelson's FMLA application remained in "pending" status at the time of his termination. (Id. at 5903.)

---

[1] According to Wachovia, Nelson did not apply for FMLA leave until the afternoon of July 17, 2006. (Albuquerque Dep. Ex. 5 at 1995.)

[2] Liberty and Hewitt administered Wachovia's employee benefit plans.

[3] Liberty maintains that Nelson reported a loss date of February 21, 2006, when he apparently suffered a different horse riding accident. (Olson Dep. Ex. 3.) Nelson, however, contends that he claimed June 22, 2006, as his loss date. (Carl Nelson Decl. ¶ 19.)

4

The parties dispute the events that preceded Nelson's termination. According to Nelson, on July 17, 2006, he entered Stubson's office to thank her for fixing a problem with his phone and to discuss his FMLA leave request. (Nelson Dep. at 250.) After speaking with Stubson for a few minutes, Nelson stood up to leave and while smiling and laughing, put his hand on Stubson's shoulder and neck and said "please, if you're going to change my stuff around, you got to tell me. I'm already losing my mind, don't make it any harder." (Id. at 250-52.) In contrast, Stubson testified that on July 17, Nelson entered her office, sat down, put his feet on her desk in an "unprofessional, scary way" and said "do not do anything with my business without talking to me first." (Stubson Dep. at 71, Ex. 3 at 103.) Nelson then stood up, leaned over Stubson's desk and "grabbed" her neck. (Stubson Dep. at 56, Ex. 3 at 103.) Afterwards, Nelson stood in Stubson's office for "what felt like an eternity" because Stubson was "in shock." (Stubson Dep. at 72.) Once Nelson left her office, Stubson started crying, went to the bathroom, noticed red fingerprints on her neck and immediately called her husband. (Id. at 71-72.)

Later that day, Stubson emailed Nelson, copying Olson, and stated, "Bob, if you have a problem, it should be discussed. No one is allowed to put their hands on my neck. I will expect an apology." (Pl. Ex. D at 1182.) Nelson then apologized and told Olson that he was "shocked" that Stubson was upset because he had

5

been "totally joking" when he touched her. (Carl Nelson Decl. ¶ 27.) The next day, Stubson resigned from Wachovia, citing being "attacked in the workplace" and an "unsafe work environment" as the reasons for her decision. (Stubson Dep. at 117-18, 133; Olson Dep. at 120.) Before Stubson left, she and Olson reported the previous day's events to Wachovia's senior employee relations consultant, Lorie Helmuth ("Helmuth"). (Olson Dep. at 120-21; Helmuth Dep. at 12-13, Ex. 3.) Helmuth immediately placed Nelson on administrative leave pending an internal investigation of the incident. (Helmuth Dep. at 24.)

After interviewing Wachovia employees and reviewing documents, Helmuth concluded that Nelson had behaved inappropriately on July 17, 2006, and recommended his termination. (Helmuth Dep. Ex. 3; Binder Dep. at 23, 69.) Helmuth reported her findings to Wachovia's regional president for the Minnesota office, Steven Binder ("Binder"). Relying on Helmuth's report, Binder concluded that Nelson's behavior on July 17 had created a "very threatening and hostile situation." (Binder Dep. at 25.) Binder then terminated Nelson for violating the provisions of Wachovia's code of conduct that prohibit violence, threats and abusive language and actions in the workplace. (Gibbons Dep. at 128, Ex. 19 at 145-46.) In addition, on a Uniform Termination Notice for Securities Industry Registration ("Form U5"), Binder stated that Nelson was terminated because he "engaged in actions that violate firm policy

and demonstrated a lack of judgment." (Pl. Ex. C-1 at 2.) At the time of Nelson's termination, Binder did not know Nelson had applied for disability benefits or FMLA leave. (Binder Dep. at 23.) Nelson appealed his termination in late August, and Wachovia upheld its decision after a full review of the investigation. (Pl. Ex. D at 1.)

On October 3, 2007, Nelson filed an amended six-count complaint against Wachovia, alleging violations of the Minnesota Human Rights Act ("MHRA"), FMLA, Employee Retirement Income Security Act ("ERISA") and common law claims for breach of contract, promissory estoppel and defamation. The court now considers Wachovia's motion for summary judgment.

**DISCUSSION**

**I. Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the

7

evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. MHRA Discrimination, FMLA Retaliation and ERISA Interference Claims**

Nelson claims that Wachovia discriminated against him in violation of the MHRA, retaliated against him after he sought medical leave in violation of the FMLA and interfered with his employment benefits in violation of ERISA. See 29 U.S.C. §§ 1140, 2615(a)(2); Minn. Stat. § 363A.08, subdiv. 2. The McDonnell Douglas burden-shifting analysis applies to all three claims. See Baucom v. Holiday Cos., 428 F.3d 764, 766 (8th Cir. 2005) (MHRA) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); Register v. Honeywell Fed. Mfg. & Techs. LLC, 397 F.3d 1130, 1137 (8th Cir. 2005) (ERISA); Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002) (FMLA). Under that

8

analysis, the plaintiff must first establish a prima facie case. Baucom, 428 F.3d at 766. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Id. If the defendant satisfies its burden, the plaintiff must show that the defendant's reason is pretext for unlawful discrimination. Id. at 766-67. Pretext can be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). "In determining whether a plaintiff has produced sufficient evidence of pretext, the key question is not whether the stated basis for termination actually occurred, but whether the defendant believed it to have occurred." Macias Soto v. Core-Mark Int'l, Inc., 521 F.3d 837, 842 (8th Cir. 2008). In other words, "[a] proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination." Twymon v. Wells Fargo & Co., 462 F.3d 925, 935 (8th Cir. 2006).

Even assuming that Nelson could establish prima facie cases for his MHRA, FMLA and ERISA claims, the claims fail because he cannot show that Wachovia's proffered reason for terminating him was pretextual. According to Wachovia, it terminated Nelson because his threatening, violent and hostile treatment of Stubson

violated Wachovia's code of conduct. In response, Nelson argues that Wachovia's explanation for his termination is pretextual because he was only joking around with Stubson and she resigned because of issues unrelated to the July 17 incident.

At the time of Nelson's termination, Wachovia genuinely believed Stubson's version of the July 17 events and relied on that information to conclude that Nelson's conduct was inappropriate and warranted his dismissal. (Binder Dep. at 25; Gibbons Dep. at 128, Ex. 19 at 145-46; Helmuth Dep. Ex. 3.) Moreover, no evidence indicates that Wachovia held its belief in bad faith or terminated Nelson for an illegitimate reason. Rather, Nelson himself acknowledged that touching Stubson was "very inappropriate." (Nelson Dep. Ex. 10 at 10, Ex. 22 at 117.) Therefore, the court determines that Nelson cannot establish pretext, and summary judgment is warranted on Nelson's MHRA discrimination, FMLA retaliation and ERISA interference claims.

**III. FMLA Interference Claim**

The FMLA prohibits employers from interfering with, restraining or denying the exercise of an employee's rights provided under the Act. See 29 U.S.C. § 2615(a)(1). Nelson argues that Olson unlawfully discouraged him from applying for FMLA leave when she told him to "hang in there" and continue working. See 29 C.F.R. § 825.220(b) (employer may not discourage employee from using FMLA leave). Olson's comment, however, was reasonable and

10

indicated that Wachovia was in the process of devising a coverage plan to allow Nelson to take more time off. See 29 C.F.R. § 825.302(e) ("An employee must consult with the employer and make a reasonable effort to schedule the leave so as not to disrupt unduly the employer's operations."). Furthermore, when Nelson told Olson he wanted to apply for leave on July 7, 2006, Olson immediately provided him the necessary information and paperwork. Therefore, the court determines that Olson did not deter Nelson from taking leave in violation of the FMLA.

Nelson also maintains that Wachovia interfered with his FMLA rights by terminating him. An employer is not liable for FMLA interference, however, where the reason for an employee's dismissal is not related to his FMLA leave. See Phillip v. Mathews, 547 F.3d 905, 911 (8th Cir. 2008). As discussed above, Wachovia terminated Nelson for perceived misconduct, not because of his request for leave. Indeed, Binder did not know about Nelson's leave request when he terminated him. Therefore, Nelson cannot establish that Wachovia interfered with his FMLA rights, and summary judgment is warranted on this claim.

**IV. MHRA Failure to Accommodate Claim**

Nelson also contends that Wachovia failed to accommodate his request for leave in violation of the MHRA. Under the MHRA, an employer must provide a disabled employee reasonable accommodations. See Minn. Stat. § 363A.08, subdiv. 6. An employee

11

establishes a violation of the MHRA's duty to accommodate by showing he is a qualified individual with a disability and the employer knew of the disability but did not provide reasonable accommodations. See Liljedahl v. Ryder Student Transp. Servs. Inc., 341 F.3d 836, 841 (8th Cir. 2003) (applying MHRA). A reasonable accommodation need not be the accommodation an employee requests or prefers. See Hennefent v. Mid Dakota Clinic, P.C., 164 F.3d 419, 422 n.2 (8th Cir. 1998).

Assuming without deciding that Nelson was a qualified individual with a disability, Nelson's claim fails because he cannot establish that Wachovia did not provide him a reasonable accommodation. It is undisputed that Wachovia allowed Nelson to work a reduced schedule after his June 22, 2006, horse riding accident. See Minn. Stat. § 363A.08, subdiv. 6(a) (modified schedule a reasonable accommodation under MHRA). Furthermore, upon Nelson's request, Olson immediately took steps to help him apply for leave. Such actions constitute reasonable accommodations. Therefore, the court grants Wachovia's motion for summary judgment on this claim.

## V. Breach of Contract Claims

Nelson asserts numerous breach of contract claims related to the employment and bonus agreements.[4] Under Minnesota Law, a claim

---

[4] Nelson also claims that Wachovia breached an agreement he allegedly made with Steve Jensen ("Jensen"), who recruited Nelson
(continued...)

of breach of contract requires proof of the formation of a contract, the performance of conditions precedent by the plaintiff and the breach of the contract by the defendant. See Briggs Transp. Co. v. Ranzenberger, 217 N.W.2d 198, 200 (Minn. 1974).

Nelson first argues that as of June 22, 2006, he was disabled and Wachovia breached the bonus agreement by failing to pay him a lump sum equal to his remaining bonus payments. Nelson, however, was never found to be disabled within the meaning of Wachovia's LTD plan and he has presented no evidence that he suffered a "total disability" as required by the bonus agreement. Furthermore, due to his misconduct, Nelson was no longer "an employee in good standing" as of July 17, 2006. Accordingly, the court determines that Wachovia did not breach the bonus agreement.

Second, Nelson asserts that Wachovia breached the employment agreement by not allowing him to maintain his foreign accounts after May 2006.[5] Wachovia admits that it adopted a new policy in

---

[4](...continued)
to work at First Union. According to Nelson, the agreement required Jensen to reimburse him for certain fees that he paid to his former employer. Nelson, however, presents no evidence that Wachovia was a party to the agreement or that Jensen, Wachovia or First Union agreed to repay him. Rather, the agreement cited by Nelson states that it is an "agreement between Bob Nelson and Steve Jensen" and contains no repayment provision. (Pl. Ex. C-1 at 65.) Therefore, Nelson has not established the existence of a contract with Wachovia regarding the repayment of fees.

[5] Nelson also asserts a promisssory estoppel claim against Wachovia with respect to his foreign accounts. The doctrine of
(continued...)

2006 prohibiting certain foreign accounts. As Nelson testified, however, the new policy took effect after his termination and he did not lose any foreign accounts while working at Wachovia. (Nelson Dep. at 408-09.) Therefore, Wachovia's new policy did not breach Nelson's employment agreement.

Finally, Nelson maintains that Wachovia breached his employment agreement by failing to pay him the STD benefits that he was awarded by Liberty in December 2006. As noted earlier, Wachovia properly terminated Nelson and had the right under the refinancing agreement to apply the STD benefits toward repayment of the loan. Accordingly, summary judgment is warranted on Nelson's breach of contract claims.

## VI. Defamation

Nelson claims that he was defamed by Binder's comments in the Form U5 and statements made by Helmuth regarding his conduct on July 17, 2006. To prevail on a claim of defamation under Minnesota law, a plaintiff must show that "'the defendant made a false and defamatory statement about the plaintiff in an unprivileged publication to a third party that harmed the plaintiff's reputation in the community.'" Pope v. ESA Servs., Inc., 406 F.3d 1001, 1011

---

[5](...continued)
promissory estoppel, however, "only applies where no contract exists." See Sacred Hearts Farmers Coop. Elevator v. Johnson, 232 N.W.2d 921, 923 n.1 (Minn. 1975). It is undisputed that a written agreement governed Nelson's maintenance of his foreign accounts. Therefore, summary judgment is warranted on Nelson's promissory estoppel claim.

(8th Cir. 2005) (quoting Weinberger v. Maplewood Review, 668 N.W.2d 667, 673 (Minn. 2003)). Allegedly defamatory statements are protected by a qualified privilege when "made in good faith, ... upon proper occasion, from a proper motive and ... based upon reasonable or probable cause." See McClure v. Am. Family Mut. Ins. Co., 223 F.3d 845, 854 (8th Cir. 2000).

Here, Nelson has presented no evidence that his reputation in the community was harmed by Binder's and Helmuth's comments. Furthermore, the qualified privilege protects the statements made by Binder and Helmuth because they arose out of an internal employment investigation and reflected the reasonable good faith belief of Binder and Helmuth that Nelson's conduct on July 17 was inappropriate. Accordingly, summary judgment is granted on Nelson's defamation claim.

## CONCLUSION

Based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 76] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 10, 2009

s/David S. Doty
David S. Doty, Judge
United States District Court
